**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **ALEXANDRIA HESSE, individually, and on behalf of all others similarly situated,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**MIDLAND CREDIT MANAGEMENT, INC. TRUEACCORD, CORP., and MIDLAND FUNDING, LLC,**<br><br>    **Defendants.** | Case No.:<br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS ACTION COMPLAINT** |

### CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FDCPA

**COMES NOW** Plaintiff, Alexandria Hesse, by and through the undersigned counsel and for her Class Action Complaint for damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") against Defendants, Midland Credit Management, Inc., TrueAccord, Corp., and Midland Funding, LLC, alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff filed this single cause of action against all Defendants in the interest of judicial economy since the allegations against each named Defendant stem from the same Debt, as defined herein, and seek separate relief, as detailed herein. Additionally, Plaintiff seeks relief related to two separate classes, as detailed herein.

2.      Plaintiff alleges Defendants' collection practices violate the FDCPA.

3.      The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. Congress, finding evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of

individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumes against debt collection abuses. 15 U.S.C. § 1692(a)-(e).

4.      The FDCPA is a remedial statute drafted to protect consumers and "eliminate abusive debt collection practices by debt collectors." *Richmond v. Higgins*, 435 F.3d 825, 828 (8th Cir.2006).

5.      "Importantly, the question of whether the consumer actually owes the alleged debt has no bearing on FDCPA claims." *Royal Financial Group, LLC v. Teri Perkins*, Case No. ED98991 (MO Ct. App., E. Dist., Aug. 20, 2013), quoting *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992).

6.      "The FDCPA is a strict liability statute; proof of one violation is sufficient to support judgment for the consumer. *Royal Financial Group, LLC v. Teri Perkins*, Case No. ED98991 (MO Ct. App., E. Dist., Aug. 20, 2013), quoting *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990). "[D]ebt collectors are liable for failure to comply with any provision of the [FDCPA]." *Dunham v. Portfolio Recovery Assocs.*, 663 F.3d 997, 1000 (8th Cir. 2011).

7.      When evaluating whether a collection communication is false, deceptive, or misleading, courts must consider such communication from the perspective of an 'unsophisticated consumer'. *See Peters v. Gen. Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002). The unsophisticated consumer standard "is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung of the sophistication ladder." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004).

## JURISDICTION AND VENUE

8.      This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d).

9.      Venue is proper in this District because part of the acts and transactions occurred within this District, Plaintiff resides within this District, and Defendants transact substantial business within this District.

## PARTIES

10.     Plaintiff, Alexandria Hesse (hereafter "Ms. Hesse" or "Plaintiff") is a natural person, over the age of eighteen, residing in St. Charles County, State of Missouri at all times relevant hereto.

11.     Ms. Hesse is a "consumer" within the meaning of the FDCPA.

12.     Defendant, Midland Credit Management, Inc. (hereinafter "Midland Credit") is a company with a principal place of business  located at 350 Camino de la Reina, Ste. 100, San Diego, CA 92108-3007.

13.     Midland Credit has transacted business within this state as is more fully set forth hereinafter in this Complaint.

14.     Midland Credit regularly collects or attempts to collect debts asserted to be owed to others.

15.     Midland Credit is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

16.     The principal purpose of Midland Credit's businesses is the collection of such debts.

17.     Midland Credit uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

18.     Midland Credit is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

19.     Defendant, TrueAccord, Corp. (hereinafter "TrueAccord") is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Francisco County, California.

20.     TrueAccord has transacted business within the State of Missouri as is more fully set forth hereinafter in this Complaint.

21.     TrueAccord regularly collects or attempts to collect debts asserted to be owed to others.

22.     TrueAccord is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

23.     The principal purpose of TrueAccord's businesses is the collection of such debts.

24.     TrueAccord uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

25.     TrueAccord accord is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

26.     Defendant, Midland Funding, LLC (hereinafter "Midland Funding") is a limited liability company with a principal place of business  located at 350 Camino de la Reina, Ste. 100, San Diego, CA 92108-3007.

27.     Midland Funding has transacted business within this state as is more fully set forth hereinafter in this Complaint.

28.     Midland Funding regularly collects or attempts to collect debts asserted to be owed to others.

29.     Midland Funding is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

30.     The principal purpose of Midland Funding's businesses is the collection of such debts.

31.     Midland Funding uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

32.     Midland Funding is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

33.     Throughout this Complaint, Midland Credit, TrueAccord, and Midland Funding are collectively referred to as the "Defendants".

## FACTS

34.     All of Defendants' collection actions at issue occurred within one year of the date of this Complaint.

35.     Sometime prior to January 1, 2020, Ms. Hesse incurred a debt to Comenity Bank, account number ending in 4678, in the amount of $535.87 (the "Debt").

36.     The Debt was incurred as a financial obligation that was primarily for personal, family, or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

## Allegations Against Midland Credit Management, Inc.

37.     At an exact time known only to Midland Credit, the alleged Debt may have been assigned, transferred, or sold to Midland Credit for purposes of collection.

38.     At the time the alleged Debt may have been assigned, transferred, or sold to Midland Credit for purposes of collection, the Debt was in default.

39.     In its efforts to collect the alleged Debt, Midland Credit decided to contact Plaintiff by written correspondence.

40.     Rather than preparing and mailing such written correspondence to Plaintiff on its own, upon information and belief, Midland Credit decided to utilize third-party vendor(s) to perform such activities on its behalf.

41.     As part of its utilization of third-party vendor(s), Midland Credit conveyed information regarding the Debt to the third-party vendor(s).

42.     The information conveyed by Midland Credit to third-party vendor(s) included Plaintiff's status as a debtor, the precise amount of the Debt, the entity to which Plaintiff allegedly owed the Debt, and/or the fact that the Debt concerned a defaulted debt of Plaintiff, among other things.

43.     Midland Credit also conveyed it was a debt collector and was attempting to collect a debt from Plaintiff.

44.     Midland Credit's conveyance of the information regarding the alleged Debt to the third party vendor is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

45.     The third-party vendor then, upon information and belief, populated some or all this information into a prewritten template, which it printed, and mailed  to Plaintiff as a letter at Midland Credit's direction.

46.     Sometime after May 21, 2020, Ms. Hesse received a collection letter from Midland Credit, dated May 21, 2020 (the "May 21, 2020 Letter"). (A true and accurate copy of the May 21, 2020 Letter is annexed hereto as "**Exhibit 1**").

47.     The May 21, 2020 Letter was an attempt to collect the Debt.

48.     The May 21, 2020 Letter, which conveyed information about the alleged Debt, is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

49.     Plaintiff received and read the May 21, 2021 Letter from Midland Credit concerning the alleged Debt.

50.     Ms. Hesse never had any business or personal dealings with Midland Credit.

51.     The May 21, 2020 Letter stated, in the relevant part, that the "Current Owner" of the Debt is "Midland Credit Management, Inc.".

52.     The May 21, 2020 Letter stated, in the relevant part, that the "Original Creditor" of the Debt was "Comenity Bank".

53.     Upon information and belief, Midland Credit may not be the actual current owner of the Debt.

54.     Sometime after February 24, 2021, Ms. Hesse received another collection letter from Midland Credit, dated February 24, 2021 (the "February 24, 2021 Letter"). (A true and accurate copy of the February 24, 2021 Letter is annexed hereto as "**Exhibit 2**").

55.     Plaintiff received and read the February 24, 2021 Letter from Midland Credit concerning the alleged Debt.

56.     The February 24, 2021 Letter was an attempt to collect the Debt.

57.     The February 24, 2021 Letter, which conveyed information about the alleged Debt, is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

58.     The February 24, 2021 Letter stated, in the relevant parts, the "Current Owner" of the Debt is "Midland Credit Management, Inc.".

59.     The February 24, 2021 Letter stated, in the relevant part, the "Original Creditor" of the Debt was "Comenity Bank".

60.   Upon information and belief Midland Credit may not be the actual current creditor of the Debt.

61.   Midland Credit's conduct detailed herein violated the FDCPA.

62.   Ms. Hesse had to spend time, and had to hire counsel, to investigate Midland Credit's conduct described herein.

**Allegations Against TrueAccord, Corp. and Midland Funding, LLC**

63.   At an exact time known only to Midland Funding, the Debt may have been assigned, transferred, and/or sold to Midland Funding for purposes of collection.

64.   At the time the alleged Debt may have been assigned, transferred, or sold to Midland Funding for purposes of collection, the Debt was in default.

65.   At an exact time known only to TrueAccord and Midland Funding, the alleged Debt was placed with TrueAccord for purposes of collection.

66.   At the time the alleged Debt was placed with TrueAccord for purposes of collection, the Debt was in default.

67.   Upon information and belief, TrueAccord performs very little to no verification or review of debts placed with TrueAccord by Midland Funding for purposes of collection.

68.   At all times material hereto, TrueAccord was collecting on behalf of Midland Funding to satisfy the Debt.

69.   Upon information and belief, Midland Funding granted TrueAccord access to its information and systems that normally would be within Midland Funding's exclusive control, including, but not limited to, Ms. Hesse's information, for collection purposes.

70.     Upon information and belief, Midland Funding allowed TrueAccord to enter or access Ms. Hesse's information into/in Midland Funding's sales, operating, compliance, and/or client management systems.

71.     The information conveyed by Midland Funding to TrueAccord included Ms. Hesse's status as a debtor, the precise amount of the alleged Debt, the entity to which Mr. Hesse allegedly owed the Debt, and the fact that the alleged Debt concerned a defaulted debt of Ms. Hesse.

72.     Midland Funding's conveyance of the information regarding the alleged Debt to TrueAccord is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

73.     Ms. Hesse did not provide Midland Funding prior consent before it conveyed information regarding the alleged Debt to TrueAccord.

74.     Upon information and belief, Midland Funding provided TrueAccord authority to use Midland Funding's trade name, trademark(s), or service mark(s).

75.      Upon information and belief, Midland Funding reviews letter and email templates generated by TrueAccord.

76.     Upon information and belief, Midland Funding approves letter and email templates generated by TrueAccord.

77.     Upon information and belief, Midland Funding directs TrueAccord as to what offers to make to consumers through various letter and/or email campaigns.

78.     Upon information and belief, TrueAccord is required to follow Midland Funding's operational and/or compliance guidance when communicating with consumers.

79.     Upon information and belief, Midland Funding performs audits on TrueAccord's business and operations.

80.     Upon information and belief, Midland Funding fines TrueAccord for any failure of compliance with Midland Funding's operational and/or compliance guidance.

81.     Either TrueAccord was acting within the scope of an employee, representative, or agent on behalf of Midland Funding for purposes of collecting the Debt for Midland Funding and Midland Funding is responsible for the conduct of TrueAccord as its employee, representative, or agent, as Midland Funding was collecting or attempting to collect the Debt through TrueAccord, therefore is responsible for the acts, conduct, and/or omissions of TrueAccord; or Midland Funding violated 15 U.SC. § 1692c(b) when it conveyed information regarding the Debt to TrueAccord.

82.     Sometime around July 1, 2020, TrueAccord began an email campaign and sent Ms. Hesse a total of at least 20 emails, over a three-month period, as detailed herein, in an attempt to collect the Debt (collectively, the "Emails").

83.     The Emails were sent to Ms. Hesse during a national state of emergency, as well as a state of emergency declared by the State of Missouri resulting from the COVID-19 pandemic.

84.     Emails sent to Ms. Hesse are dated:

1)  Wednesday, July 1, 2020 at 1:20 p.m.;
2)  Wednesday, July 8, 2020 at 2:52 p.m.;
3)  Monday, July 20, 2020 at 8:28 a.m.;
4)  Saturday, July 25, 2020 at 8:38 a.m.;
5)  Thursday, July 30, 2020 at 3:50 p.m.;
6)  Sunday, August 9, 2020 at 3:28 p.m.;
7)  Thursday, August 20, 2020 at 6:15 p.m.;
8)  Wednesday, August 26, 2020 at 7:02 p.m.;
9)  Sunday, August 30, 2020 at 1:45 p.m.;
10) Wednesday, September 2, 2020 at 3:46 p.m.;
11) Sunday, September 6, 2020 at 4:20 p.m.;
12) Thursday, September 10, 2020 at 5:47 p.m.;
13) Monday, September 14, 2020 at 4:21 p.m.;
14) Sunday, September 20, 2020 at 3:10 p.m.;
15) Wednesday, September 23, 2020 at 4:17 p.m.;
16) Saturday, September 26, 2020 at 5:42 p.m.;
17) Wednesday, September 30, 2020 at 8:03 a.m.;
18) Friday, October 2, 2020 at 1:35 p.m.;

       19) Wednesday, October 7, 2020 at 7:10 p.m.; and

       20) Sunday, October 11, 2020 at 7:17 p.m.

85.     The Emails caused notifications to appear and sound on Ms. Hesse's cellular phone.

86.     The Emails were received in as little as three (3) days apart and as many as two (2) per calendar week.

87.     Upon information and belief, the Emails are form or template email collection notices regularly used by TrueAccord.

88.     Upon information and belief, the Emails are computer generated and sent to consumers in mass.

89.     Ms. Hesse did not request any communications to be sent to her via email from TrueAccord.

90.     Ms. Hesse did not authorize TrueAccord to send any communications to her via email.

91.     The Emails did not have any attachment.

92.     The Emails were from Isabel Orozco with TrueAccord.

93.     The Emails contained sensitive information regarding the Debt in the body of each email notice.

94.     On or about July 1, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "July 1, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the July 1, 2020 Email is annexed hereto as "**Exhibit 3**")

95.     Ms. Hesse received and read the July 1, 2020 Email.

96.     The July 1, 2020 Email states, in the relevant part, *"Hi, we're TrueAccord, a third-party collection agency working on behalf of Midland Funding, LLC who now owns your original Comenity Bank (Victoria's Secret) account."*

97.     The July 1, 2020 Email states, in the relevant part, the "Current Creditor" of the Debt is "Midland Funding, LLC".

98.     The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

99.     The July 1, 2020 Email states, in the relevant part, the "Date of Purchase" and a date of "Nov 20, 2019".

100.    The foregoing is false, deceptive, misleading, and/or confusing because Ms. Hesse did not make any purchase with the Comenity Bank (Victoria's Secret) credit card on November 20, 2019.

101.    The July 1, 2020 Email further states, "Midland Funding LLC purchased this debt and is attempting to collect it by placing the account with TrueAccord."

102.    The July 1, 2020 Email was the initial communication received by Ms. Hesse from TrueAccord.

103.    The July 1, 2020 Email contained the required disclosure provided under § 1692g.

104.    On or about July 8, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "July 8, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the July 8, 2020 Email is annexed hereto as "**Exhibit 4**")

105.     Ms. Hesse received and read the July 8, 2020 Email.

106.    The July 8, 2020 Email states, in the relevant part, the "creditor who currently owns this [Debt]" is "Midland Funding, LLC".

107.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

108.    The July 8, 2020 Email demanded payment from Ms. Hesse.

109.    The July 8, 2020 Email did not contain any language to prevent overshadowing of Ms. Hesse's 1692g rights.

110.    The demand for payment within the July 8, 2020 Email overshadowed Ms. Hesse's 1692g rights.

111.    On or about July 20, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "July 20, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the July 20, 2020 Email is annexed hereto as "**Exhibit 5**")

112.     Ms. Hesse received and read the July 20, 2020 Email.

113.    The July 20, 2020 Email states, in the relevant part, *"Midland Funding LLC (current creditor…)…"*

114.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

115.    The July 20, 2020 Email demanded payment from Ms. Hesse.

116.    The July 20, 2020 Email did not contain any language to prevent overshadowing of Ms. Hesse's 1692g rights.

117.    The demand for payment within the July 20, 2020 Email overshadowed Ms. Hesse's 1692g rights.

118.    On or about July 25, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "July 25, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the July 25, 2020 Email is annexed hereto as "**Exhibit 6**")

119.     Ms. Hesse received and read the July 25, 2020 Email.

120.    The July 25, 2020 Email states, in the relevant part, the "[Current] Creditor" of the Debt is "Midland Funding, LLC".

121.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

122.    The July 25, 2020 Email demanded payment from Ms. Hesse.

123.    The July 25, 2020 Email did not contain any language to prevent overshadowing of Ms. Hesse's 1692g rights.

124.    The demand for payment within the July 25, 2020 Email overshadowed Ms. Hesse's 1692g rights.

125.    On or about July 30, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "July 30, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the July 30, 2020 Email is annexed hereto as "**Exhibit 7**")

126.     Ms. Hesse received and read the July 30, 2020 Email.

127.    The July 30, 2020 Email states, in the relevant part, *"You can get started on resolving your Midland Funding LLC account as well by clicking the link above!"*

128.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

129.    The July 30, 2020 Email demanded payment from Ms. Hesse.

130.    The July 30, 2020 Email did not contain any language to prevent overshadowing of Ms. Hesse's 1692g rights.

131.    The demand for payment within the July 30, 2020 Email overshadowed Ms. Hesse's 1692g rights.

132.    TrueAccord sent four emails to Ms. Hesse demanding payment within the 30-day dispute and verification period overshadowing Ms. Hesse's 1692g rights.

133.    On or about August 9, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "August 9, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the August 9, 2020 Email is annexed hereto as "**Exhibit 8**")

134.     Ms. Hesse received and read the August 9, 2020 Email.

135.    The August 9, 2020 Email states, in the relevant part, *"We'd like to discuss solutions for your outstanding balance of $535.87 with Midland Funding LLC (current creditor…)…"*

136.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

137.    On or about August 20, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "August 20, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the August 20, 2020 Email is annexed hereto as "**Exhibit 9**")

138.     Ms. Hesse received and read the August 20, 2020 Email.

139.    The August 20, 2020 Email states, in the relevant part, *"TrueAccord is a collection agency and is authorized to collect on your $535.87 debt to Midland Funding LLC (current creditor…)…"*

140.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

141.    On or about August 26, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "August 26, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the August 26, 2020 Email is annexed hereto as "**Exhibit 10**")

142.    Ms. Hesse received and read the August 26, 2020 Email.

143.    The August 26, 2020 Email states, in the relevant part, *"Your debt with Midland Funding LLC (current creditor…)…"*

144.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

145.    On or about August 30, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "August 30, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the August 30, 2020 Email is annexed hereto as "**Exhibit 11**")

146.     Ms. Hesse received and read the August 30, 2020 Email.

147.    The August 30, 2020 Email states, in the relevant part, *"Your balance with Midland Funding LLC (current creditor…)…"*

148.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

149.    On or about September 2, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "September 2, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the September 2, 2020 Email is annexed hereto as "**Exhibit 12**")

150.     Ms. Hesse received and read the September 2, 2020 Email.

151.    The September 2, 2020 Email states, in the relevant part, *"You still have to pay your debt with Midland Funding LLC (current creditor…)…"*

152.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

153.    On or about September 6, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "September 6, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the September 6, 2020 Email is annexed hereto as "**Exhibit 13**")

154.    Ms. Hesse received and read the September 6, 2020 Email.

155.    The September 6, 2020 Email states, in the relevant part, *"Your balance with Midland Funding LLC (current creditor…)…"*

156.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

157.    On or about September 10, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "September 10, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the September 10, 2020 Email is annexed hereto as "**Exhibit 14**")

158.    Ms. Hesse received and read the September 10, 2020 Email.

159.    The September 10, 2020 Email states, in the relevant part, *"My name is Isabel and I'm your fully automated Account Manager over at TrueAccord."*

160.    The foregoing confused Ms. Hesse as she was unsure if Isabel Orozco was a real person or not.

161.    The September 10, 2020 Email states, in the relevant part, the "Current Creditor" of the Debt is "Midland Funding, LLC".

162.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

163.    The September 10, 2020 Email further states, the "Product" is "Midland Credit Management, Inc.".

164.    The foregoing is false, deceptive, misleading, and/or confusing, as Midland Credit Management, Inc. is not the "product" of the Debt.

165.    The September 10, 2020 Email states at the bottom of the email, "This was originally an account with COMENITY BANK (VICTORIA'S SECRET), account number ending in", then fails to provide the last series of digits of the account number.

166.    Ms. Hesse couldn't not identify the Debt because TrueAccord and Midand Funding provided false, misleading, deceptive, and/or confusing information and/or failed to provide critical information regarding the Debt, i.e. the last series of digits of the original creditor account number.

167.    On or about September 14, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "September 14, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the September 14, 2020 Email is annexed hereto as "**Exhibit 15**")

168.     Ms. Hesse received and read the September 14, 2020 Email.

169.    The September 14, 2020 Email states, in the relevant part, *"Our records show you haven't been in touch with us."*

170.    The September 14, 2020 Email states, in the relevant part,  "*You should respond especially if you have questions above this outstanding balance with Midland Funding LLC (current creditor…)...*"

171.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

172.    The September 14, 2020 Email states at the bottom of the email, "This was originally an account with COMENITY BANK (VICTORIA'S SECRET), account number ending in", then fails to provide the last series of digits of the account number.

173.    Ms. Hesse couldn't not identify the Debt because TrueAccord and Midland Funding provided false, misleading, deceptive, and/or confusing information and/or failed to provide

critical information regarding the Debt, i.e. the last series of digits of the original creditor account number.

174.    On or about September 20, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "September 20, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the September 20, 2020 Email is annexed hereto as "**Exhibit 16**")

175.    Ms. Hesse received and read the September 20, 2020 Email.

176.    The September 20, 2020 Email states, in the relevant part, *"you haven't fulfilled your obligation to Midland Funding LLC (current creditor…)…"*

177.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

178.    The September 20, 2020 Email states at the bottom of the email, "This was originally an account with COMENITY BANK (VICTORIA'S SECRET), account number ending in", then fails to provide the last series of digits of the account number.

179.    Ms. Hesse couldn't not identify the Debt because TrueAccord and Midand Funding provided false, misleading, deceptive, and/or confusing information and/or failed to provide critical information regarding the Debt, i.e. the last series of digits of the original creditor account number.

180.    On or about September 23, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "September 23, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the September 23, 2020 Email is annexed hereto as "**Exhibit 17**")

181.    Ms. Hesse received and read the September 23, 2020 Email.

182.    The September 23, 2020 Email states, in the relevant part, *"We've told you in the past emails that you owe a balance of $535.87 to COMENITY BANK (VICTORIA'S SECRET)."*

183.    Below the foregoing the September 23, 2020 Email states, in the relevant part, the "Current Creditor" of the Debt is "Midland Funding, LLC".

184.    The foregoing is false, deceptive, misleading, and/or confusing because the September 23, 2020 Email is indicating that Ms. Hesse owes the Debt to Comenity Bank and Midland Funding LLC.

185.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

186.    The September 23, 2020 Email states, "Original creditor account ending in", then fails to provide the last series of digits of the account number.

187.    Ms. Hesse couldn't not identify the Debt because TrueAccord and Midand Funding provided false, misleading, deceptive, and/or confusing information and/or failed to provide critical information regarding the Debt, i.e. the last series of digits of the original creditor account number.

188.    The September 23, 2020 Email further provides personal information of Ms. Hesse's in the body of the email, including, her email address, phone number, and mailing address.

189.    The September 23, 2020 Email also includes a "Balance Origin" section, which states, "Original Creditor" of "COMENITY BANK (VICTORIA'S SECRET)", an "Account Open Date" of "October 12, 2018", an "Original Transaction Date" of "June 26, 2020", and a "Product" of "Midland Credit Management, Inc.".

190.    The foregoing is false, deceptive, misleading, and/or confusing as Ms. Hesse did not make any transaction on June 26, 2020 and never had a "Product" with "Midland Credit Management, Inc.

191.    On or about September 26, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "September 26, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the September 26, 2020 Email is annexed hereto as "**Exhibit 18**")

192.     Ms. Hesse received and read the September 26, 2020 Email.

193.    The subject line of the September 26, 2020 Email states, "We'd like to work with your to solve this issue".

194.    The foregoing subject line did not inform Ms. Hesse that the September 26, 2020 Email contained sensitive information regarding the Debt.

195.    The September 26, 2020 Email contained a TrueAccord account number in the upper part of the body of the email.

196.    In the body of the September 26, 2020 Email there are several bullet points.

197.    The first bullet point in the September 26, 2020 Email states, "You have an outstanding balance of $535.87.

198.    The second bullet point in the September 26, 2020 Email states, "You originally owed this to Midland Funding, LLC (current creditor of your original COMENITY BANK (VICTORIA'S SECRET) account).

199.    The third bullet point in the September 26, 2020 Email states, "But your debt went into a collection process and is currently owned by Midland Funding, LLC.  We're collecting on their behalf."

200.    Upon information and belief, Midland Funding may not be the current creditor or owner of the Debt.

201.    To the extent that Midland Funding is the current creditor or owner of the Debt, second and third bullet point in the September 26, 2020 Email contradict each other.

202.    The second bullet point in the September 26, 2020 Email states that the Debt was "originally" owed to Midland Funding, then states  in parentheses "current creditor of your original Comenity Bank…account".

203.    The second bullet point in the September 26, 2020 Email states that the Debt was "originally" owed to Midland Funding, while the third bullet point states that Midland Funding is the "current creditor" of the Debt.

204.    The Debt was not originated by Midland Funding.

205.    Midland Funding and Comenity Bank cannot both be the originating or original creditor.

206.    The foregoing misidentification of the original creditor and current creditor is false, misleading, deceptive, and/or confusing.

207.    TrueAccord states that it is an agent of Midland in the third bullet point of the September 26, 2020 Email, "We're collecting on [Midland's] behalf."

208.    Just above the signature line in the body of the September 26, 2020 Email it states, "Here are the details:".

209.    Then the September 26, 2020 Email states, "Current creditor: Midland Funding, LLC".

210.    Underneath the foregoing the September 26, 2020 Email states, "Original creditor: COMENITY BANK (VICTORIA'S SECRET)".

211.    Underneath the foregoing the September 26, 2020 Email states, "Balance Due: $535.87".

212.    Underneath the foregoing the September 26, 2020 Email states, "Original creditor account ending in:".

213.    The foregoing details regarding the Debt indicates that Midland Funding, LLC is the current creditor when the second bullet point in the body of the September 26, 2020 Email indicated that Midland Funding, LLC was the original creditor.

214.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

215.    The foregoing details regarding the Debt indicates that Comenity Bank (Victoria's Secret) is the original creditor when the second bullet point in the body of the September 26, 2020 Email indicated that Midland Funding, LLC was the original creditor.

216.    The foregoing details regarding the Debt indicates that Comenity Bank (Victoria's Secret) is the original creditor, when Comenity Bank and Victoria's Secret are two different entities.

217.    Victoria's Secret is owned by L Brands, not Comenity Bank.

218.    Victoria's Secret is not a bank.

219.    Victoria's Secret does not issue credit to consumers.

220.    The foregoing details regarding the Debt provided in the September 26, 2020 Email are false, misleading, deceptive, and/or confusing.

221.    The September 26, 2020 Email states, "Original creditor account ending in:", then fails to provide the last series of digits of the account number.

222.    Ms. Hesse couldn't not identify the Debt because TrueAccord and Midand Funding provided false, misleading, deceptive, and/or confusing information and/or failed to provide critical information regarding the Debt, i.e. the last series of digits of the original creditor account number.

223.     On or about September 30, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "September 30, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the September 30, 2020 Email is annexed hereto as "**Exhibit 19**")

224.     Ms. Hesse received and read the September 30, 2020 Email.

225.     The September 30, 2020 Email states, in the relevant part, *"This is about your balance of $535.87 with Midland Funding LLC (current creditor…)…"*

226.     The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

227.     The September 30, 2020 Email states at the bottom of the email, "This was originally an account with COMENITY BANK (VICTORIA'S SECRET), account number ending in", then fails to provide the last series of digits of the account number.

228.     Ms. Hesse couldn't not identify the Debt because TrueAccord and Midand Funding provided false, misleading, deceptive, and/or confusing information and/or failed to provide critical information regarding the Debt, i.e. the last series of digits of the original creditor account number.

229.     On or about October 2, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "October 2, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the October 2, 2020 Email is annexed hereto as "**Exhibit 20**")

230.     Ms. Hesse received and read the October 2, 2020 Email.

231.     The October 2, 2020 Email states, in the relevant part, *"your outstanding balance to Midland Funding LLC (current creditor…)…"*

232.     The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

233.    The October 2, 2020 Email states at the bottom of the email, "This was originally an account with COMENITY BANK (VICTORIA'S SECRET), account number ending in", then fails to provide the last series of digits of the account number.

234.    Ms. Hesse couldn't not identify the Debt because TrueAccord and Midland Funding provided false, misleading, deceptive, and/or confusing information and/or failed to provide critical information regarding the Debt, i.e. the last series of digits of the original creditor account number.

235.    On or about October 7, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "October 7, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the October 7, 2020 Email is annexed hereto as "**Exhibit 21**")

236.     Ms. Hesse received and read the October 7, 2020 Email.

237.    The October 7, 2020 Email states, in the relevant part, *"Your balance of $535.87, originally owed to COMENITY BANK (VICTORIA'S SECRET) but now owned by Midland Funding LLC is an important obligation."*

238.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

239.    The October 7, 2020 Email states at the bottom of the email, "This was originally an account with COMENITY BANK (VICTORIA'S SECRET), account number ending in", then fails to provide the last series of digits of the account number.

240.    Ms. Hesse couldn't not identify the Debt because TrueAccord and Midand Funding provided false, misleading, deceptive, and/or confusing information and/or failed to provide critical information regarding the Debt, i.e. the last series of digits of the original creditor account number.

241.    On or about October 11, 2020, an email collection notice was sent to Ms. Hesse from TrueAccord (the "October 11, 2020 Email"), seeking to collect the Debt. (A true and accurate copy of the October 11, 2020 Email is annexed hereto as "**Exhibit 22**")

242.     Ms. Hesse received and read the October 11, 2020 Email.

243.    The October 11, 2020 Email states, in the relevant part, *"Your $535.87 balance with Midland Funding LLC (current creditor…)…"*

244.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

245.    The October 11, 2020 Email further states, in the relevant part, the "You agreed to terms that indicate you are liable to pay this balance."

246.    The foregoing is false, deceptive, and/or misleading, as TrueAccord has not reviewed any information regarding the Debt to make such statement and has no information in its possession to justify making such statement.

247.    The October 11, 2020 Email states at the bottom of the email, "This was originally an account with COMENITY BANK (VICTORIA'S SECRET), account number ending in", then fails to provide the last series of digits of the account number.

248.    Ms. Hesse couldn't not identify the Debt because TrueAccord and Midand Funding provided false, misleading, deceptive, and/or confusing information and/or failed to provide critical information regarding the Debt, i.e. the last series of digits of the original creditor account number.

249.    The Emails individually and collectively were false, deceptive, misleading, and/or confusing, as they contained contradictory information regarding the Debt.

250.    Upon information and belief, Midland Funding had actual knowledge of TrueAccord's FDCPA violations when communicating with Ms. Hesse and Midland Funding failed to stop such violations by TrueAccord.

251.    Upon information and belief, via a contractual relationship between Midland Funding and TrueAccord, Midland Funding had control or the ability to control TrueAccord's conduct when communicating and attempting to collect the Debt from Ms. Hesse, on behalf of Midland Funding.

252.    Upon information and belief, TrueAccord has a pattern and practice of sending false, deceptive, misleading, and/or confusing letters or emails to consumers in the hopes of tricking consumers into paying debts, including debts they would normally dispute, or may not owe.

253.    TrueAccord's and Midland Funding's conduct detailed herein violated the FDCPA.

254.    Ms. Hesse had to spend time, and had to hire counsel, to investigate TrueAccord's and Midland Funding's conduct described herein.

## CLASS ACTION ALLEGATIONS AGAINST MIDLAND CREDIT MANAGEMENT, INC.

255.    Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter "FRCP"), on behalf of herself and all consumers and their successors in interest (the "Midland Credit Class"), who were sent a debt collection letter which was not returned by the post office, which are in violation of the FDCPA, as described in this Complaint.

a.    This Action is properly maintained as a class action. The Midland Credit Class consists of:

**THE MIDLAND CREDIT CLASS**

All consumers within the State of Missouri, who were sent a collection letter, within the Class Period, that was not returned as undeliverable, from Midland Credit, attempting to collect a consumer debt, which were similar in form or format to the May 21, 2020 Letter and February 24, 2021 Letter described in this Complaint, where Midland Credit conveyed information regarding the debt to a third-party vendor.

b. The Class period begins one year prior to the filing of this Action through 21 days post the filing of this Action.

c. The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

d. Upon information and belief, the Class is so numerous that joinder of all members is impracticable because there are hundreds and/or thousands of persons who have received debt collection letters from Midland Credit that violate specific provisions of the FDCPA. Plaintiff is complaining of a standard form or template letter that is sent to hundreds of persons;

e. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation:

f. Whether Midland Credit violated various provisions of the FDCPA including but not limited to:

    i. 15 U.S.C. §§ 1692c(b), and 1692f;

    ii. Whether Plaintiff and the Class have been injured by the Midland Credit's conduct;

      iii.  Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Midland Credit's wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

g.  Plaintiff's claims are typical of the Class, which all arise from the same operative facts and are based on the same legal theories.

h.  Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class.

i.  Plaintiff will fairly and adequately protect the interest of the Class and has retained experienced and competent attorneys to represent the Class.

j.  A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

k.  A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as monetary damages. If Midland Credit's conduct is allowed to proceed without remedy they will continue to reap and retain the proceeds of their ill-gotten gains.

## CLASS ACTION ALLEGATIONS AGAINST
## TRUEACCORD, CORP. AND MIDLAND FUNDING, LLC

256.    Plaintiff brings this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter "FRCP"), on behalf of herself and all consumers and their successors in interest (the "TrueAccord Class"), who have received debt collection email notices from TrueAccord on behalf of Midland Funding which are in violation of the FDCPA, as described in this Complaint.

    a.  This Action is properly maintained as a class action. The TrueAccord Class consists of:

**THE TRUEACCORD CLASS**

All consumers within the State of Missouri, were sent an email collection notice, within the Class Period, that was not returned as undeliverable, from TrueAccord on behalf of Midland Funding, attempting to collect a consumer debt, which were similar in form or format to the Emails described in this Complaint, which included contradictory information regarding the debt, did not clearly or correctly identify the name of the current creditor of the debt, and/or was missing information regarding the debt.

    b.  The Class period begins one year prior to the filing of this Action through 21 days post the filing of this Action.

    c.  The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

    d.  Upon information and belief, the TrueAccord Class is so numerous that joinder of all members is impracticable because there are hundreds and/or thousands of persons who have received email collection notices from TrueAccord on behalf of

Midland Funding that violate specific provisions of the FDCPA. Plaintiff is complaining of a standard form email collection notice that is sent to hundreds or thousands of persons;

e.   There are questions of law and fact which are common to the TrueAccord Class and which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation:

f.   Whether TrueAccord and Midland Funding violated various provisions of the FDCPA including but not limited to:

    i.   15 U.S.C. §§ 1692e,1692e(2)(A), & 1692e(10), 1692f, and 1692g;

    ii.   Whether Plaintiff and the TrueAccord Class have been injured by TrueAccord's and Midland Funding's conduct;

    iii.   Whether Plaintiff and the TrueAccord Class have sustained damages and are entitled to restitution as a result of TrueAccord's and Midland Funding's wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

g.   Plaintiff's claims are typical of the TrueAccord Class, which all arise from the same operative facts and are based on the same legal theories.

h.   Plaintiff has no interest adverse or antagonistic to the interest of the other members of the TrueAccord Class.

i.   Plaintiff will fairly and adequately protect the interest of the TrueAccord Class and has retained experienced and competent attorneys to represent the Class.

j.  A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

k.  A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as monetary damages. If TrueAccord's and Midland Funding's conduct is allowed to proceed without remedy they will continue to reap and retain the proceeds of their ill-gotten gains.

## COUNT I: Violation of § 1692c(b) of the FDCPA Against Midland Credit Management, Inc.

257.  Plaintiff incorporates by reference Paragraphs 1 to 18 and 34 to 62 of this Complaint as if fully stated herein.

258.  15 U.S.C. § 1692c(b) provides that, subject to several exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."

259.  The third-party vendor does not fall within any of the exceptions provided for in 15 U.S.C. § 1692c(b).

260.  Plaintiff never consented to Midland Credit's communication with third-party vendor(s) concerning the alleged Debt.

261.    Plaintiff never consented to Midland Credit's communication with third-party vendor(s) concerning Plaintiff's personal and/or confidential information.

262.    Plaintiff never consented to Midland Credit's communication with anyone concerning the alleged Debt or concerning Plaintiff's personal and/or confidential information.

263.    Upon information and belief, Midland Credit has utilized third-party vendor(s) for these purposes thousands of times.

264.    Midland Credit utilizes third-party vendor(s) in this regard for the sole purpose of maximizing its profits.

265.    Midland Credit utilizes third-party vendor(s) without regard to the propriety and privacy of the information which it discloses to such third-party.

266.    Midland Credit utilizes third-party vendor(s) with reckless disregard for the harm to Plaintiff and other consumers that could result from Midland Credit's unauthorized disclosure of such private and sensitive information.

267.    Midland Credit violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's alleged Debt to third-party vendor(s).

268.    Midland Credit's violation of §1692c(b) of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. *See,* 15 U.S.C. § 1692k.

### COUNT II: Violation of § 1692g of the FDCPA Against
### Midland Credit Management, Inc.

269.    Plaintiff incorporates by reference Paragraphs 1 to 18 and 34 to 62 of this Complaint as if fully stated herein.

270.    Pursuant to Section § 1692g of the FDCPA, within five days of an initial communication with a consumer, a debt collector must provide a written notice, known as a "G-notice", that contains relevant information about the alleged debt and how to dispute it.

271.    In the relevant part, § 1692g(a)(2) states:

(a) …**Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**

**…**

**(2)  the name of the creditor to whom the debt is owed;**

**…**

272.    The May 21, 2020 Letter and February 24, 2021 Letter fail to represent the accurate name of the current creditor.

273.    Midland Credit's conduct violates of 15 U.S.C. § 1692g.

274.    Midland Credit's violation of §1692g of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. *See,* 15 U.S.C. § 1692k.

### COUNT III: Violation of §§ 1692e, 1692e(2)(A), & 1692e(10) of the FDCPA Against Midland Credit Management, Inc.

275.    Plaintiff incorporates by reference Paragraphs 1 to 18 and 34 to 62 of this Complaint as if fully stated herein.

276.    Section 1692e of the FDCPA prohibits the use of any false, deceptive, or misleading representation or means in connection with the collection of any debt, and underscores the general application of such prohibition.

277.    §1692e(2)(A) and 1692e(10) of the FDCPA provide,

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
…
(2) The false representation of—
        (A) the character, amount, or legal status of any debt; or
…

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
…

278.    The May 21, 2020 Letter and February 24, 2021 Letter fail to represent the accurate name of the current creditor.

279.    Based upon the foregoing, Midland Credit's failure to state the accurate name of the current creditor was a false, deceptive, and/or misleading representation or means in connection with the collection of the Debt.

280.    Based upon the foregoing, Midland Credit falsely represented the character of the Debt.

281.    Based upon the foregoing, Midland Credit's failure to state the accurate name of the current creditor was a false representation or deceptive means to collect or attempt to collect the Debt.

282.    Midland Credit's conduct violates of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10).

283.    Midland Credit's violation of §§ 1692e, 1692e(2)(A), and 1692e(10) of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. *See,* 15 U.S.C. § 1692k.

### COUNT IV: Violation of §1692f of the FDCPA Against Midland Credit Management, Inc.

284.    Plaintiff incorporates by reference Paragraphs 1 to 18 and 34 to 62 of this Complaint as if fully stated herein.

285.    Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt", and underscores "the general application of" such prohibition.

286.     In violating §§ 1692c(b), 1692g, and 1692e of the FDCPA, as detailed in Count I, II, and III, herein, Midland Credit has implicitly also violated §1692f of the FDCPA by virtue of the unfair practices alleged therein.

287.     The unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable.

288.     Midland Credit disclosed Plaintiff's private and sensitive information to the third-party vendor(s).

289.     Midland Credit violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's Debt to third-party vendor(s).

290.     The May 21, 2020 Letter and February 24, 2021 Letter fail to represent the accurate name of the current creditor of the Debt.

291.     Midland Credit's conduct constitutes unfair and unconscionable acts by Midland Credit, in violation of 15 U.S.C. § 1692f.

292.     Midland Credit's violation of §1692f of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. *See,* 15 U.S.C. § 1692k.

### COUNT V: Violation of § 1692c(b) of the FDCPA Against Midland Funding, LLC

293.     Plaintiff incorporates by reference Paragraphs 1 to 11, 19  to 36, and 63 to 254 of this Complaint as if fully stated herein.

294.     15 U.S.C. § 1692c(b) provides that, subject to several exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."

295.    The third-party vendors that, upon information and belief, Midland Funding utilized in its efforts to collect the alleged Debt do not fall within any of the exceptions provided for in 15 U.S.C. § 1692c(b).

296.    Plaintiff never consented to Midland Funding's communication with third-party vendor(s) concerning the alleged Debt.

297.    Plaintiff never consented to Midland Funding's communication with third-party vendor(s) concerning Plaintiff's personal and/or confidential information.

298.    Plaintiff never consented to Midland Funding's communication with anyone concerning the alleged Debt or concerning Plaintiff's personal and/or confidential information.

299.    Upon information and belief, Midland Funding has utilized third-party vendor(s) for these purposes thousands of times.

300.    Midland Funding utilizes third-party vendor(s) in this regard for the sole purpose of maximizing its profits.

301.    Midland Funding utilizes third-party vendor(s) without regard to the propriety and privacy of the information which it discloses to such third-party.

302.    Midland Funding utilizes third-party vendor(s) with reckless disregard for the harm to Plaintiff and other consumers that could result from Midland Funding's unauthorized disclosure of such private and sensitive information.

303.    Either, TrueAccord was acting within the scope of an employee, representative, or agent on behalf of Midland Funding for purposes of collecting the Debt for Midland Funding and Midland Funding is responsible for the conduct of TrueAccord as its employee, representative, or agent, as Midland Funding was collecting or attempting to collect the Debt through TrueAccord,

therefore is responsible for the acts, conduct, and/or omissions of TrueAccord; or Midland Funding violated 15 U.SC. § 1692c(b) when it conveyed information regarding the Debt to TrueAccord.

304.    Midland Funding's violation of §1692c(b) of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. *See,* 15 U.S.C. § 1692k.

## COUNT VI: Violation of § 1692c(a)(1) of the FDCPA Against TrueAccord, Corp. & Midland Funding, LLC

305.    Plaintiff incorporates by reference Paragraphs 1 to 11, 19 to 36, and 63 to 254 of this Complaint as if fully stated herein.

306.    15 U.S.C. § 1692c(a)(1) provides that, "*without the prior consent of the consumer given directly to the debt collector…, a debt collector may not communicate with a consumer in connection with the collection of any debt at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer.*"

307.    Sometime around July 1, 2020, TrueAccord began an email campaign and sent Ms. Hesse a total of at least 20 emails, over a three-month period.

308.    The Emails were sent to Ms. Hesse during a national state of emergency, as well as a state of emergency declared by the State of Missouri resulting from the COVID-19 pandemic.

309.    The Emails caused notifications to appear and sound on Ms. Hesse's cellular phone.

310.    The Emails were received in as little as three (3) days apart and as many as two (2) per calendar week.

311.    Upon information and belief, the Emails are form or template email collection notices regularly used by TrueAccord.

312.    Upon information and belief, the Emails are computer generated and sent to consumers in mass.

313.     Ms. Hesse did not request any communications to be sent to her via email from TrueAccord.

314.     Ms. Hesse did not authorize TrueAccord to send any communications to her via email.

315.     TrueAccord and Midland Funding violated 15 U.S.C. § 1692c(a)(1) when they continuously contacted Ms. Hesse during unusual times or places or at times or a place known or which should be known to be inconvenient to Ms. Hesse.

316.     TrueAccord's and Midland Funding's violation of §1692c(a)(1) of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. *See,* 15 U.S.C. § 1692k.

## COUNT VII: Violation of § 1692d(5) of the FDCPA Against TrueAccord, Corp. & Midland Funding, LLC

317.     Plaintiff incorporates by reference Paragraphs 1 to 11, 19 to 36, and 63 to 254 of this Complaint as if fully stated herein.

318.     15 U.S.C. § 1692c(a)(1) prohibits a debt collector from engaging *"in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."* Including, "*causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."*

319.     Sometime around July 1, 2020, TrueAccord began an email campaign and sent Ms. Hesse a total of at least 20 emails, over a three-month period.

320.     The Emails were sent to Ms. Hesse during a national state of emergency, as well as a state of emergency declared by the State of Missouri resulting from the COVID-19 pandemic.

321.     The Emails caused notifications to appear and sound on Ms. Hesse's cellular phone.

322.   The Emails were received in as little as three (3) days apart and as many as two (2) per calendar week.

323.   Upon information and belief, the Emails are form or template email collection notices regularly used by TrueAccord.

324.   Upon information and belief, the Emails are computer generated and sent to consumers in mass.

325.   Ms. Hesse did not request any communications to be sent to her via email from TrueAccord.

326.   Ms. Hesse did not authorize TrueAccord to send any communications to her via email.

327.   TrueAccord and Midland Funding violated 15 U.S.C. § 1692d(5) when they repeatedly caused Ms. Hesse's cellular phone to receive email notifications and ring with intent to annoy, abuse, or harass Ms. Hesse into paying the Debt.

328.   TrueAccord's and Midland Funding's violation of §1692d(5) of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. *See,* 15 U.S.C. § 1692k.

### COUNT VIII: Violation of § 1692g of the FDCPA Against TrueAccord, Corp. & Midland Funding, LLC

329.   Plaintiff incorporates by reference Paragraphs 1 to 11, 19 to 36, and 63 to 254 of this Complaint as if fully stated herein.

330.   Pursuant to Section § 1692g of the FDCPA, within five days of an initial communication with a consumer, a debt collector must provide a written notice, known as a "G-notice", that contains relevant information about the alleged debt and how to dispute it.

331.   In the relevant part, § 1692g(a)(2) states:

      **(b) …Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**

      **…**

      **(3)   the name of the creditor to whom the debt is owed;**

      **…**

332.    The July 1, 2020 Email was the initial communication received by Plaintiff from TrueAccord regarding the Debt.

333.    The July 1, 2020 Email states, in the relevant part, the "Current Creditor" of the Debt is "Midland Funding, LLC".

334.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter received by Plaintiff from Midland Credit, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

335.    TrueAccord's and Midland Funding's conduct violates  15 U.S.C. § 1692g.

336.    TrueAccord's and Midland Funding's violation of §1692g of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. *See,* 15 U.S.C. § 1692k.

### COUNT IX: Violation of §§ 1692e, 1692e(2)(A), & 1692e(10) of the FDCPA Against TrueAccord, Corp. & Midland Funding, LLC

337.    Plaintiff incorporates by reference Paragraphs 1 to 11, 19 to 36, and 63 to 254 of this Complaint as if fully stated herein.

338.    Section 1692e of the FDCPA prohibits the use of any false, deceptive, or misleading representation or means in connection with the collection of any debt, and underscores the general application of such prohibition.

339.    §1692e(2)(A) and 1692e(10) of the FDCPA provide,

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
…
(2) The false representation of—
        (A) the character, amount, or legal status of any debt; or
…
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
…

340.    The July 1, 2020 Email was the initial communication received by Plaintiff from TrueAccord regarding the Debt.

341.    The July 1, 2020 Email states, in the relevant part, the "Current Creditor" of the Debt is "Midland Funding, LLC".

342.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter received by Plaintiff from Midland Credit, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

343.    The Emails generally state that the "Current Creditor" of the Debt is "Midland Funding, LLC".

344.    The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter received by Plaintiff from Midland Credit, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

345.    Based upon the foregoing, TrueAccord's and Midland Funding's failure to state the accurate name of the current creditor was a false, deceptive, and/or misleading representation or means in connection with the collection of the Debt.

346.    Based upon the foregoing, TrueAccord and Midland Funding falsely represented the character of the Debt.

347.    Based upon the foregoing, TrueAccord's and Midland Funding's failure to state the accurate name of the current creditor was a false representation or deceptive means to collect or attempt to collect the Debt.

348.    TrueAccord's and Midland Funding's conduct violates of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10).

349.    TrueAccord's and Midland Funding's violation of §§ 1692e, 1692e(2)(A), and 1692e(10) of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. *See,* 15 U.S.C. § 1692k.

### COUNT X: Violation of §1692f Of The FDCPA Against TrueAccord, Corp. & Midland Funding, LLC

350.    Plaintiff incorporates by reference Paragraphs 1 to 11, 19 to 36, and 63 to 254 of this Complaint as if fully stated herein.

351.    Section 1692f of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt", and underscores "the general application of" such prohibition.

352.    In violating § 1692c(b) of the FDCPA, as detailed in Count V, herein, Midland Funding has implicitly also violated §1692f of the FDCPA by virtue of the unfair practices alleged therein.

353.    The unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable.

354.    Midland Funding disclosed Plaintiff's private and sensitive information to the third-party vendor(s), including TrueAccord.

355.    Midland Funding violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's Debt to third-party vendor(s).

356. In violating §§ 1692g and 1692e of the FDCPA, as detailed in Count VIII and IX, herein, TrueAccord and Midland Funding have implicitly also violated §1692f of the FDCPA by virtue of the unfair practices alleged therein.

357. The July 1, 2020 Email was the initial communication received by Plaintiff from TrueAccord regarding the Debt.

358. The July 1, 2020 Email states, in the relevant part, the "Current Creditor" of the Debt is "Midland Funding, LLC".

359. The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter received by Plaintiff from Midland Credit, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

360. The Emails generally state that the "Current Creditor" of the Debt is "Midland Funding, LLC".

361. The foregoing contradicts the May 21, 2020 Letter and February 24, 2021 Letter received by Plaintiff from Midland Credit, which represent that "Midland Credit Management, Inc." is the "Current Creditor" of the Debt.

362. TrueAccord's and Midland Funding's conduct constitutes unfair and unconscionable acts, in violation of 15 U.S.C. § 1692f.

363. TrueAccord's and Midland Funding's violation of §1692f of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. *See,* 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF AGAINST MIDLAND CREDIT MANAGEMENT, INC.

**WHEREFORE**, Plaintiff demands judgment against Midland Credit Management, Inc. as follows:

(a) Declaring that this action is properly maintainable as a Class Action, as to the Midland Credit Class and certifying Plaintiff as Class representative and, Boris Graypel, Esq., as Class Counsel;

(b) Awarding Plaintiff and the Class statutory damages provided by § 1692k(a) of the FDCPA;

(c) Awarding Plaintiff reasonable attorneys' fees and costs for Plaintiff as provided by § 1692k(a) of the FDCPA;

(d) Awarding Plaintiff and the Class such other and further relief as this Court may deem just and proper.

## PRAYER FOR RELIEF AGAINST TRUEACCORD, CORP. AND MIDLAND FUNDING, LLC

**WHEREFORE**, Plaintiff demands judgment against TrueAccord, Corp. and Midland Funding, LLC as follows:

(a) Declaring that this action is properly maintainable as a Class Action, as to the TrueAccord Class and certifying Plaintiff as Class representative and, Boris Graypel, Esq., as Class Counsel;

(b) Awarding Plaintiff and the Class statutory damages provided by § 1692k(a) of the FDCPA against TrueAccord, Corp. and Midland Funding, LLC;

(c) Awarding Plaintiff reasonable attorneys' fees and costs for Plaintiff as provided by § 1692k(a) of the FDCPA against TrueAccord, Corp. and Midland Funding, LLC;

(d) Awarding Plaintiff and the Class such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all Counts so triable.


Dated: May 21, 2021

<div style="margin-left:40%">

Respectfully Submitted,

**LEGAL RIGHTS COUNSEL**

/s/ Boris Graypel_____
By: Boris E. Graypel, #68529MO
12685 Dorsett Rd., #258
St. Louis, Missouri 63043-2100
Phone: (314) 300-9590
Fax: (314) 754-9305
E-mail: bgraypel@gmail.com

*Attorney for Plaintiff*

</div>